UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TANVEER AHMED, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:22-cv-02474 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| RENA BITTER, *et al*, | § | |
| Defendants. | § | |

OPINION AND ORDER
GRANTING SUMMARY JUDGMENT

This is an action for mandamus or injunctive relief to compel certain individuals in their official capacity as employees of the United States to adjudicate an immigrant visa application. Dkt 1. Their motion to dismiss for lack of subject-matter jurisdiction is denied, but their motion in the alternative for summary judgment is granted. Dkt 26.

1. Background

Plaintiff Tanveer Ahmed is a lawful permanent resident of the United States. He brought this lawsuit to compel the United States Department of State to schedule a consular interview related to his I-824 petition for his wife to join him here. Dkts 1 at 1 & 27 at 6. Defendants are Rena Bitter (as Assistant Secretary of the Bureau of Consular Affairs, Department of State), Donald Blome (as Ambassador to the United States Embassy in Pakistan), and Antony Blinken (as Secretary of the Department of State). For simplicity, they are referred to here as *the Government*.

Plaintiff filed the I-824 "Application for Action on an Approved Application or Petition" in November 2019, sometimes referred to as a *follow-to-join petition*. This

petition is grounded on Plaintiff's own immigrant visa application, which was approved in December 2018. Dkt 27 at 6. The record establishes that the I-824 was "approved" in August 2021. Dkt 22-1 at 54, 59. Plaintiff also says that the application was deemed "documentarily qualified" as of February 10, 2022, meaning (at least to his belief and understanding) that all necessary information and fees had been received. Dkt 27 at 7.

Though the exact process isn't clear from the record, it appears that after approval of the I-824 petition, the immigrant visa application process starts. The beneficiary of the petition—here, Plaintiff's wife—must appear for an interview with a consular official before the Government can adjudicate the application. See Dkt 26 at 11. It's clear that no consular interview has since been scheduled for Plaintiff's wife to complete the immigrant visa process. Dkt 27 at 7.

Plaintiff thus filed this lawsuit to compel the Government to schedule the interview and adjudicate his wife's immigrant visa application. He seeks relief under either the Administrative Procedure Act or the Mandamus Act (or both). Dkt 1 at ¶10–30. The Government moves to dismiss for lack of subject-matter jurisdiction or, in the alternative, for summary judgment. Dkt 26.

2. Subject-matter jurisdiction; Rule 12(b)(1)

Plaintiff asserts that jurisdiction exists over this case in a number of ways. Two are the Immigration and Nationality Act (8 USC §1101, *et seq*) and the Declaratory Judgment Act (28 USC §2201). But he doesn't purport to identify any cause of action as to the former under which he brings this lawsuit. And the latter doesn't confer jurisdiction on its own. See *Schilling v Rogers*, 363 US 666, 677 (1960). Jurisdiction thus can't be maintained under either of those.

Plaintiff also argues that jurisdiction exists under the Mandamus Act (28 USC §1361), the Administrative Procedure Act (5 USC §706(1)), and federal-question jurisdiction (28 USC §1331). See Dkt 27 at 6. As to these,

2

the APA itself doesn't directly grant subject-matter jurisdiction, but it does allow for a cause of action raising a federal question. See *Califano v Sanders*, 430 US 99, 107 (1977). The pertinent consideration, then, is whether jurisdiction exists here on the basis of either the Mandamus Act or a federal question by way of the APA.

    a. Legal standard

Subject-matter jurisdiction is inherently a threshold matter. *Steel Co v Citizens for a Better Environment*, 523 US 83, 94–95 (1998), quoting *Mansfield, Coldwater & Lake Michigan Railway Co v Swan*, 111 US 379, 382 (1884). This is because federal courts are ones of limited jurisdiction. *Howery v Allstate Insurance Co*, 243 F3d 912, 916 (5th Cir 2001), citing *Kokkonen v Guardian Life Insurance Co of America*, 511 US 375, 377 (1994). A decision to hear a case that's beyond the subject-matter jurisdiction of a federal court isn't a "mere technical violation," but is instead "an unconstitutional usurpation" of power. Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* §3522 (West 3d ed April 2022 update).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of an action for lack of subject-matter jurisdiction. Dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998) (internal quotations omitted). The burden is on the party asserting jurisdiction to establish by a preponderance of the evidence that it is proper. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008).

    b. Administrative Procedure Act

The APA provides a reviewing court jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed." 5 USC §706(1). But jurisdiction doesn't exist for review of "agency action [that] is

3

committed to agency discretion by law." 5 USC §701. This means that federal courts are only empowered "to compel an agency to perform a ministerial or non-discretionary act." *Norton v Southern Utah Wilderness Alliance*, 542 US 55, 64 (2004). This in turn means that, for jurisdiction to exist over Plaintiff's §706(1) claim, Plaintiff must sufficiently allege that "an agency failed to take a discrete agency action that it is required to take." Ibid.

The Government argues that Plaintiff hasn't identified any such non-discretionary act that it's required to take but hasn't. See Dkt 26 at 11–15. In this regard, the Government correctly points out that neither the immigration statutes nor regulations prescribe a deadline by which it must adjudicate immigrant visa applications. As such, no statute or regulation specifically mandates *when* or *whether* to grant or deny such application.

But §555(b) of Title 5 to the United States Code mandates standards applicable to every federal agency, and states, "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." Courts have determined from this that the Government has a non-discretionary duty to adjudicate applications within a reasonable time. See *Li v Jaddou*, 2022 WL 3588326, *2, *4 (WD Tex), affirmed on Rule 12(b)(6) grounds, 2023 WL 3431237 (5th Cir, *per curiam*) (in context of application for adjustment of status to lawful permanent resident, finding that agency's "obligation to adjudicate Plaintiffs' [applications] within a reasonable time is not discretionary"); *Pedrozo v Clinton*, 610 F Supp 2d 730, 738 (SD Tex 2009) (in context of non-immigrant visa applications, citing §555(b) and holding that "at some point failure to take action runs afoul of the APA").

A non-discretionary duty is thus upon the Government under §555(b) to adjudicate immigrant visa applications within a reasonable time. This means in turn that jurisdiction exists as a federal question under §706(1) of the APA as to action seeking to compel the Government to

4

observe the reasonable-time mandate with respect to adjudication of Plaintiff's wife's immigrant visa application. The allegations of the complaint in this regard are thus sufficient. See Dkt 1 at ¶¶1, 15–16, 19.

The motion to dismiss for lack of subject-matter jurisdiction will be denied as to claims under the APA.

### c. Mandamus Act

The Mandamus Act provides district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 USC §1361. "A district court's decision not to exercise jurisdiction under the mandamus statute . . . is a discretionary one." *Newsome v EEOC*, 301 F3d 227, 231 (5th Cir 2002), citing *Franchi v Manbeck*, 972 F2d 1283, 1289 (Fed Cir 1992). But mandamus jurisdiction does exist "if the action is an attempt to compel . . . [the agency] to perform an allegedly nondiscretionary duty owed to the plaintiff." *Wolcott v Sebelius*, 635 F3d 757, 766 (5th Cir 2011).

It's determined above that the Government has a non-discretionary duty to adjudicate Plaintiff's wife's immigrant visa application within a reasonable time. Mandamus jurisdiction thus exists over Plaintiff's attempt to compel the Government to perform that duty.

The motion to dismiss for lack of subject-matter jurisdiction will be denied with respect to claims under the Mandamus Act.

### 3. Summary judgment; Rule 56(a)

The Government moves in the alternative for summary judgment on the grounds that adjudication of Plaintiff's wife's immigrant visa application hasn't been unlawfully withheld or unreasonably delayed as a matter of law. Dkt 27 at 15–20.

### a. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

### b. Mandamus Act

"When mandamus jurisdiction exists, the court must determine whether [the plaintiff] has stated a claim for mandamus relief." *Wolcott v Sebelius*, 635 F3d at 768. The Fifth Circuit is clear that an enforcing order under the

6

Mandamus Act may issue only when (i) the plaintiff has a clear right to relief, (ii) the defendant has a clear duty to act, and (iii) no other adequate remedy exists. Ibid. Even if all three elements are satisfied, the court has discretion to grant or deny the writ of mandamus because of the "extraordinary nature of the remedy." Ibid.

It's determined above that jurisdiction exists over Plaintiff's claim for relief under §706(1) of the APA. Other adequate remedy thus exists. And it's also noted above that the standards for obtaining relief for delayed agency action under the APA and under the Mandamus Act are similar, if not identical. See *Vietnam Veterans of America v Shinseki*, 599 F3d 654, 660 n 6 (DC Cir 2010). Relief by way of mandamus thus doesn't present itself as an appropriate remedy, and the exercise of jurisdiction in that regard will be declined.

The motion for summary judgment will be granted as to the requested relief under the Mandamus Act.

    c. Administrative Procedure Act

To determine whether action is unlawfully withheld or unreasonably delayed, courts often analyze what's known as the six-factor *TRAC* test, as coined by the DC Circuit:

> (i) Whether the agency's timing is governed by a "rule of reason";
> 
> (ii) Whether Congress has provided a timetable;
> 
> (iii) Whether the consequence of delay is economic, in which case delay is more tolerable than "when human health and welfare are at stake";
> 
> (iv) Whether expediting delayed action will affect other agency priorities;
> 
> (v) What interests will be prejudiced by delay; and
> 
> (vi) Whether impropriety is behind the delay (though impropriety isn't required to find unreasonable delay).

*Telecommunications Research and Action Center v FCC*, 750 F2d 70, 79–80 (DC Cir 1984).

7

The Fifth Circuit has never formally adopted the *TRAC* test, and as such, it isn't binding. See *Li v Jaddou*, 2023 WL 3431237, *1 n 2. But other courts in this circuit have found these factors to provide a useful framework. For example, see *Zheng v Mayorkas*, 2023 WL 4112938, *5 n 2 (ND Miss); *Vasireddy v Mayorkas*, 2021 WL 4888943, *3 (ND Tex); *Jaraba v Blinken*, 568 F Supp 3d 720, 733 (WD Tex 2021); *Parcha v Cuccinelli*, 2020 WL 607103, *14 (ED Tex); *Sawan v Chertoff*, 589 F Supp 817, 832 (SD Tex 2008).

Plaintiff in this action seeks an order—as in now, immediately—that would compel the Government to adjudicate his wife's immigrant visa application. Upon review of the *TRAC* factors, and in light of the undisputed evidence in the administrative record, as a matter of law, Plaintiff hasn't demonstrated entitlement to that specific relief. For it can't be said that agency action on Plaintiff's visa application on behalf of his wife has been "unlawfully withheld or unreasonably delayed" within the meaning of §706(1) of the APA.

*As to the first factor,* the Government has identified a rule of reason by which it governs the timing of processing immigrant visa cases. And that is, it systematically processes applications according to its foreign policy priorities and the timing of when the case documents are complete for each application. See Dkts 22-3 at 1–2 (declaration of National Visa Center assistant director); 22-5 at 2 (declaration of Immigrant Visa Unit Chief, US Embassy Islamabad, Pakistan); 22-6 at 1–13 (declaration of Bureau of Consular Affairs, Visa Office field operations director); 22-6 at 18–79 (directions to diplomatic and consular posts on prioritization of visa services during and after COVID-19 pandemic).

*As to the second factor,* Congress hasn't provided a timetable for the Government to process immigrant visa applications. Such timing is thus within the discretion of the agency. See *Sierra Club v Gorsuch*, 715 F2d 653, 658 (DC Cir 1983). In the context of processing immigration cases, the Supreme Court observes, "All of this takes time—and often a lot of it." *Scialabba v Cuellar de Osorio*,

8

573 US 41, 50 (2014). It also notes delays of "years—or even decades" as an unfortunate, but lawful, reality of the immigrant visa process. Id at 45. Courts have thus found delays of several years to be not unreasonable. For example, see *Yan v Mueller*, 2007 WL 1521732, *9 (SD Tex) (finding delay of over three years not unreasonable); see also *Debba v Heinauer*, 366 Fed Appx 696, 699 (8th Cir 2010) (finding ten-year delay not unreasonable); *In re City of Virginia Beach*, 42 F3d 881, 886 (4th Cir 1994) (finding delay of over four years not unreasonable); *Sarlak v Pompeo*, 2020 WL 3082018, *6 (DDC), citing *Yavari v Pompeo*, 2019 WL 6720995, *8 (CD Cal) (cleaned up) (in immigration context, delays "between three to five years are often not unreasonable").

Less than three years have passed since Plaintiff's I-824 application was approved in August 2021. Dkt 22-1 at 54. In the immigration context, and in mind of the cited cases, that timeline isn't unreasonable for the Government to schedule a consular interview and adjudicate the immigrant visa application.

*As to the third factor,* Plaintiff alleges that health and human welfare are at stake. For example, his wife still resides in Pakistan, where he asserts that women experience high rates of violence. And he and his wife are both suffering emotionally because they can't conceive children while they remain separated. Dkt 27 at 7–8, 18. Such circumstances do evoke sympathy. But no showing is made of anything particular to their unique situation, or that any hardships they face due to delay are different from those of similarly situated applicants. See *Da Costa v Immigration Investor Program Office*, 80 F4th 330, 345 (DC Cir 2023) (finding factor three to weigh against applicant whose allegations of health and welfare harms were generalized and not linked to individual circumstances); *Mysaev v United States Citizenship and Immigration Services*, 2022 WL 2805398, *6 (ND Tex) (finding third factor not met because same claimed delays were impacting thousands of other applicants); *Dehghanighanatghestani v Mesquita*, 2022 WL 4379061,

9

*9 (DDC) (noting court must consider "health and welfare" of not just applicant, but all others similarly situated); *Mohammad v Blinken*, 548 F Supp 3d 159, 168–69 (DDC 2021) (expressing sympathy, while "mindful that many others face similarly difficult circumstances as they await adjudication").

Even if Plaintiff's difficult family circumstances were construed to place this factor in his favor, it isn't enough to overcome the other factors that weigh strongly in favor of the Government. See *Mohammad*, 548 F Supp 3d at 169; accord *Bagherian v Pompeo*, 442 F Supp 3d 87, 95–96 (recognizing interest of applicant and her fiancé in living together in United States, while finding twenty-five-month delay not unreasonable).

*As to the fourth factor,* the DC District Court has observed that "immigrant visa processing is a zero-sum game with [the agency's] limited resources. Processing one category of immigrant visas necessarily results in diminished resources for processing another category of visas." *Gjoci v Department of State*, 2021 WL 3912143, *13 (DDC); see also *Dastagir v Blinken*, 557 F Supp 3d 160, 168 (DDC 2021): "Catapulting [one petitioner] to the front of the line 'direct[s] resources away from the adjudications that the State Department has identified as more urgent.'" This means that expediting any putative delayed action on Plaintiff's application will affect other agency priorities, while sending other applicants, whom the Government is entitled to prioritize for foreign policy and other reasons, to the back of the line.

The Supreme Court recognizes that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v Aguirre-Aguirre*, 526 US 415, 425 (1999), quoting *INS v Abudu*, 485 US 94, 110 (1988); accord *Legal Assistance for Vietnamese Asylum Seekers v Department of State*, 104 F3d 1349, 1353 (DC Cir 1997) (noting that State Department is owed discretion on its consular services policies because it involves "balancing

10

complex concerns involving security and diplomacy, State Department resources and the relative demand for visa applications"). The Government has shown that such deference is appropriate here. It cites various factors as contributing to its delays in processing immigrant visas, such as personnel and resource limitations and administration foreign-policy priorities related to the United States's relationship with Pakistan and the evacuation of Afghanistan. Dkt 26 at 16–17, 22.

At base, the United States Embassy, due to circumstances beyond its control, has a significant backlog of non-citizens seeking immigrant visas, and Plaintiff doesn't present any special reason why he and his wife should be able to skip the line ahead of other applicants whom the Government has chosen, in its discretion, to prioritize for security and/or diplomatic reasons. The Government is owed deference to its prioritization decisions. This factor accordingly favors the Government.

*As to the fifth factor,* Plaintiff himself is undoubtably prejudiced by delay. But any such prejudice isn't overcome by the other factors, which weigh strongly in favor of the Government. And indeed, the interests of the Government in implementing its policy priorities will be prejudiced if individual applicants can dictate by lawsuit when the Government must act on certain categories of visas. Likewise, this would also prejudice the interests of other applicants who are ahead of Plaintiff in line.

*As to the sixth factor,* Plaintiff alleges no impropriety by the Government, and none is apparent. He does argue for discovery on this factor to determine whether the Government has acted in good faith. Dkt 27 at 20. But the APA provides that judicial review is based on "the whole record or those parts of it cited by a party." 5 USC §706. And caselaw suggests a standard presumption against supplementing the administrative record or conducting extra-record discovery in APA cases. *La Union Del Pueblo Entero v FEMA*, 141 F Supp 3d 681, 694–95 (SD Tex 2015); *State of Louisiana ex rel Guste v Verity*, 853 F2d 322, 327 n 8 (5th Cir 1988). This is particularly appropriate here,

11

where the administrative record reflects that the Government is working diligently to process immigrant visa applications. See Dkt 22-4 (adjudication statistics).

In sum, consideration of the *TRAC* factors doesn't suggest that unreasonable delay by the Government exists as to the processing of the subject application. Review of the administrative record as a whole shows that, as a matter of law, the Government hasn't "unlawfully withheld or unreasonably delayed" adjudication of Plaintiff's immigration visa application in a manner contrary to the dictates of 5 USC §706(1).

The motion for summary judgment by the Government will be granted as to the relief requested under the APA.

### 4. Conclusion

The motion by to dismiss for lack of subject-matter jurisdiction is DENIED. Dkt 26.

The motion for summary judgment is GRANTED IN PART. Dkt 26. It is GRANTED as to relief requested by Plaintiff under §706(1) of the Administrative Procedure Act. It is DENIED as to relief requested by Plaintiff under the Mandamus Act.

This action is DISMISSED WITHOUT PREJUDICE.

A final judgment will issue by separate order.

SO ORDERED.

Signed on March 28, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge